| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Anwarul Islam Chunnu |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | 21-42090-ess |

☑ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11         02/20

Anwaurul Islam Chunnu 's Fourth Amended Plan of Reorganization, Dated November 8, 2022_
Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtor is an individual. The Debtor is the owner/operator of a NYC Taxi Medallion (#6A35) . The Debtor has been in this business since on or about 2010. This business is operated as a sole proprietorship.

From on or about 1985, until on or about 2015, the ownership and operation of a NYC Taxi Medallion was a profitable venture, driven in part by the finite number of medallions set by the NYC Counsel and the NYC Taxi and Limousine Commission. Unfortunately, since on or about 2015, the creation and rapid evolution of companies providing legitimate alternatives to taxi cabs, such as Uber and Lyft, and the unexpected and unforeseen effect they had on the taxi industry, in particular the plummeting of the value of the medallions, rendered it difficult for the Debtor herein to continue to perform under certain of his obligations.

In addition to the foregoing, on or about March, 2020, the NYC Metropolitan area was severely impacted by the Covid-19 crisis resulting in a series of executive orders imposed by then Governor Andrew Cuomo which, in essence, restrained trade, and stayed the ability of NYC Taxis to operate in the NY Metropolitan area.. As a consequence of these orders, NYC Taxis were prevented from accepting any passengers for hire from March, 2020 to on or about October 2020. Further, since October 2020,  as a consequence of continued work and travel restrictions imposed throughout New York City and, in particular, activity at the three major NYC Airports, the volume of available taxi fares decreased by a minimum of 80% thereafter and has continued to this day. As a consequence of the foregoing, the NYC Taxi Medallion industry has been irreparably devastated and may never recover to anywhere near pre-March 2020 levels.

When all of the foregoing events and circumstances are taken into account, the present market value of an individual NYC Taxi Medallion has decreased to approximately $165,000.00 based upon sales data published by the NYC Taxi and Limousine Commission.

Prior to the Petition date, the Debtor attempted to negotiate a settlement with its Taxi lien holder, OSK VIII LLC, to no avail.

In addition, as a consequence of the Covid crises, the Debtor fell behind in the remittance of mortgage payments encumbering his homestead and entered into a forbearance agreement with the mortgage holder which expired on or about March 2022. Since that time, the Debtor has successfully modified his mortgage wherein all pre-petition mortgage arrears have been capitalized, the terms of which are outlined in this amended Plan. The Debtor also has a statutory lien obligation to the NYC Water Board of approximately $15,000.00. Based upon his review of the various financial issues confronting the Debtor simultaneously, the Debtor, having the qualifications to avail himself of the protections of Chapter 11, and in particular, an election to proceed under Subchapter V, filed the instant Chapter 11 petition on August 16, 2021.

In its Plan of Reorganization, the Debtor is proposing to (a) Pay its Taxi lien holder the present market value of its collateral with interest thereon over a term of sixty (60) months; (b) Modify the outstanding balance on the mortgage encumbering his homestead and repay such balance over a term of forty (40) years with interest thereon; [c] Pay the statutory lien of the NYC Water Board with interest over a term of sixty (60) months; and (d) Pay its unsecured creditors a sum greater than the amount these creditors would have received in liquidation.  These sum shall be paid from the Debtor's future net disposable income over a term of 60 months in compliance with 11 U.S.C. Section 1191.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A_.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information for the first 12 months of operations after confirmation as Exhibit B_.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of a minimum of $1000.00 per month after the payment of all Plan obligations herein.

The final Plan payment is expected to be paid on or before December 16, 2027_.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor **Anwarul Islam Chunnu**            Case number (*if known*) _____
     Name

## Article 1: Summary

This Plan of Reorganization under chapter 11 of the Bankruptcy Code proposes to pay creditors of the *Debtor* from (a) the rental income generated from his real property and (b) his future income generated from the operation of his NYC Taxi Medallion.

This Plan provides for:     **0**    classes of priority claims;

                               **3**    classes of secured claims;

                               **1**    classes of non-priority unsecured claims; and

                               **1**    classes of the interests of the individual Debtor in property of the estate

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **two (2)** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), |
| 2.02 | **Class 2.1.1 (Secured Claim of Shellpoint Mortgage/NewRez)** | On the Petition Date, the Debtor was a participant in a Covid forbearance plan with Shellpoint Mortgage/NewRez. The Covid forbearance plan ended in March 2022. Shellpoint Mortgage/NewRez shall have an allowed secured claim in the amount of $345,600.00 inclusive of $41,600.00 in mortgage arrears through November 30, 2021. On July 13, 2022, the Debtor was granted a final mortgage modification by Shellpoint/NewRez. The Debtor commenced the remittance of modified payments of $2,173.20 per month as of August 1, 2022. The Debtor has remitted his first payment under the terms of the final modification and that an Order approving the final modification was entered in September 2022. |
| | **Class 2.1.2 (Secured Claim of NYC Water Board)** | The New York City Water Board shall have an allowed secured claim in the amount of $15,264.41. This claim shall be amortized over a term of five (5) years at 3% interest per annum. Debtor shall remit monthly payment of principal and interest of $274.28 commencing January 16, 2023 and then each and every month thereafter until December 16, 2027. |
| | **Class 2.2 (Secured Claim of OSK VIII LLC)** | OSK VIII LLC has filed a bifurcated claim alleging a secured claim against the Debtor's NYC Taxi Medallion in the amount of $165,000.00. The Debtor has reached a settlement with OSK wherein the secured claim shall be set at $165,000.00 and paid as follows: (a) Upon the entry of a Consent Order, the Debtor shall pay OSK a lump sum payment of $20,000.00. (b) the Debtor has been conditionally approved by the NYC Taxi Medallion Owner Relief Program, which will provide $20,000.00 in grant relief from the City of New York. The proceeds of the grant shall be paid over to OSK within 10 days of receipt by the Debtor; (c) The remaining balance of the secured claim, in the amount of $125,000.00 shall be amortized over a term of ten (10) years at 4% interest per annum. Debtor shall remit monthly payment of principal and interest of $1265.57 commencing one month after the entry of the Consent Order and then each and every month thereafter for the next 58 months. On the 60th month following the entry of the Consent Order, the remaining balance, comprised of principal, interest and all other amounts due OSK, shall be immediately payable to OSK by the Debtor as a lump sum payment; and (d) as a consequence of the foregoing, OSK has agreed to vote in favor of the treatment of both its secured and general unsecured claims herein.<br><br>Should the Debtor fail to remit payment to OSK as set forth above, or be in default of the Loan Documents (as defined in OSK's proof of claim), the balance then owing by th Debtor, if OSK shall so elect, shall become immediately due and payable in full. At such time, the indebtedness owed by the Debtor to OSK shall bear interest at the lesser of (i) 11.75% per annum or (ii) the highest amount permitted by law.<br><br>Furthermore, in the event of a default by the Debtor, OSK shall have the right, in its sole discretion to take the following actions:<br><br>1.    If the Debtor's Plan is confirmed consensually under 11 U.S.C. § 1191(a), OSK shall have the immediate right to exercise all of its state law remedies and contractual rights without further notice of hearing; and<br><br>2.    If the Debtor's Plan is confirmed non-consensually under 11 U.S.C. § 1191(b), OSK may file with this Court an affidavit of the Debtor's default, and upon such filing, the post-confirmation automatic stay in this Bankruptcy Case imposed under 11 U.S.C. § 362 shall be automatically terminated as to OSK and its collateral including, without limitation, New York City Taxi Medallion No. 6A35, without further order of this Court. |
| | **Class 3** | All non-priority unsecured claims allowed under § 502 of the Code, if any. On August 17, 2021, an Order was entered by the Court setting October 26, 2021 as the last day for non-priority unsecured creditors to file claims in this Chapter 11 case. The only allowed general unsecured claim is the unsecured portion of the bifurcated claim by by creditor OSK VIII LLC in the amount of $448,164.99. This creditor shall be paid a lump sum of $1,000.00 on or before January 16, 2023 - the Effective Date of the Plan. |
| 2.04 | **Class 4** | *The interests of the individual Debtor in property of the estate* |

Debtor **Anwarul Islam Chunnu**  
Name

Case number (*if known*) _____

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | Unclassified claims | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | Administrative expense claims | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid [specify terms of treatment, including the form, amount, and timing of distribution, consistent with section 1191(e) of the Code]. |
| | | Administrative claimants consists of (a) professional fees due and owing to Debtor's counsel, and (b) any professional fees which may be due and owing to Nathaniel Wasserstein, Esq., the Subchapter V Trustee assigned to this case. It is estimated that the professional fees due to Richard S. Feinsilver, Esq., Debtor's counsel will be in the approximate sum of $13,500.00, of which $7,500.00 was paid as a retainer, subject to the approval of the Court. The Debtor also estimates that there will not be any post petition administrative liabilities. In addition, the Debtor estimates legal fees of $2,500.00 to Mr. Wasserstein, subject to the entry of an appropriate Order by the Court. Any approved fees shall be paid to Mr. Wasserstein within 10 days of the entry of the Order by the Court |
| 3.03 | Priority tax claims | On August 17, 2021, an Order was entered by the Court setting February 14, 2022 as the last day for priority unsecured creditors to file claims in this Chapter 11 case. |
| | | To date, no priority claims have been filed in this case. It is is not anticipated that any priority claims shall be filed in this case |
| 3.04 | Statutory fees | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | Prospective quarterly fees | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | On August 17, 2021, an Order was entered by the Court setting February 14, 2022 as the last day for priority unsecured creditors to file claims in this Chapter 11 case.<br><br>To date, no priority claims have been filed in this case. It is is not anticipated that any priority claims shall be filed in this case |
| Class 2.1.1 – **Secured claim of** Shellpoint Mortgage/NewRez | ☐ Impaired<br>☑ Unimpaired | Shellpoint Mortgage/NewRez shall have an allowed secured claim in the amount of $345,600.00 inclusive of $41,600.00 in mortgage arrears through November 30, 2021 On July 13, 2022, the Debtor was granted a final mortgage modification by Shellpoint/NewRez. The DebtorI commenced modified payments of $2,173.20 per month on August 1, 2022. The Debtor has remitted his first payment under the terms of the final modification and it is anticipated that an Order approving the final modification was entered in September 2022. By virtue of the Order, this creditor is now unimpaired. |
| Class 2.1.2 - Secured Claim of the NYC Water Board | | The New York City Water Board shall have an allowed secured claim in the amount of $15,264.41. This claim shall be amortized over a term of five (5) years at 3% interest per annum. Debtor shall remit monthly payment of principal and interest of $274.29 commencing January 16, 2022 and then each and every month thereafter until December 16, 2027. |
| Class 2.2 - Secured Claim of OSK VIII LLC | | OSK VIII LLC shall have an allowed secured claim against the Debtor's NYC Taxi Medallion in the amount of $165,000.00. The Debtor has reached a settlement with OSK wherein the secured claim shall be paid as follows: (a) Upon the entry of a Consent Order, the Debtor shall pay OSK a lump sum payment of $20,000.00. (b) the Debtor has been conditionally approved by the NYC Taxi Medallion Owner Relief Program, which will provide $20,,000.00 in |

Debtor __Anwarul Islam Chunnu_____  Case number (*if known*) _____
      Name

| | | | |
|---|---|---|---|
| | | | grant relief from the City of New York. The proceeds of the grant shall be paid over to OSK within 10 days of receipt by the Debtor; (c) The remaining balance of the OSK VII LLC claim, in the amount of $125,000.00 shall be amortized over a term of ten (10) years at 4% interest per annum. Debtor shall remit monthly payment of principal and interest of $1265.57 commencing one month after the entry of the Consent Order and then each and every month thereafter for the next 58 months; On the 60th month following the entry of the Consent Order, the remaining balance, comprised of principal, interest and all other amounts due OSK, shall be immediately payable to OSK by the Debtor as a lump sum payment; (d) In consideration for the foregoing, OSK has agreed to vote in favor of the treatment of both its secured and general unsecured claims herein. |
| | Class 3 – Non-priority unsecured creditors | ☑ Impaired<br>☐ Unimpaired | All non-priority unsecured claims allowed under § 502 of the Code, if any. On August 17, 2021, an Order was entered by the Court setting October 26, 2021 as the last day for non-priority unsecured creditors to file claims in this Chapter 11 case. The only allowed general unsecured claim is the unsecured portion of the bifurcated claim by by creditor OSK VIII LLC in the amount of $448,164.99. This creditor shall be paid a lump sum of $1,000.00 on January 16, 2023 - the Effective Date of the Plan. OSK has agreed to vote in favor of the treatment of both its secured and general unsecured claims herein |
| | Class 4 - Equity security holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | The Debtor shall retain the residual property of the estate upon completion of its Plan payments. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | Disputed Claim | A *disputed claim* is a claim that has not been allowed or disallowed, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|---|
| 5.02 | Delay of distribution on a disputed claim | No distribution will be made on account of a disputed claim unless such claim is allowed.. |
| 5.03 | Settlement of disputed claims | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | Assumed executory contracts and unexpired leases | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

The Plan is based on the continued operation by the Debtor of its business both prior to and subsequent to the confirmation of this case. The debtor's payments to its Class 2 and Class 3 creditors shall be made from the Debtor's ongoing net operating income from the operation of its NYC Taxi Medallion and the collection of rental income from its real property.

Notwithstanding the impact that the Covid-19 Crisis had on the Debtor's business, the Debtor has shown the ability to meet his post petition obligations on a regular basis since August 16, 2021 and as of October 31, 2022 has a cash balance on hand of approximately $16,000.00. These funds shall be used to fund the Debtor's Plan obligations.

The Debtor's Operating Reports for the periods from August 2021 to October 2022 are on file with the Bankruptcy Court.

## Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: None. |
| 8.02 | Effective Date | The effective date of this Plan shall be January 16, 2023 or the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | Binding Effect: | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | Captions | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | Controlling Effect | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | Corporate Governance | Not applicable |
| [8.08 | Retention of Jurisdiction | The Bankruptcy Court shall retain and have exclusive jurisdiction of and over all matters arising under, arising out or relating to the following:<br>(a) to determine any and all objections to the allowance of Claims;<br>(b) to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;<br>(c) to determine any and all applications, adversary proceedings, and contested or litigated matters, concerning any claims of the Debtor or Reorganized Debtor preserved pursuant to the Plan and/or to set aside liens or encumbrances and/or to recover any assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other Federal, State or Local Law;<br>(d) to consider any modifications of the Plan, any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;<br>(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan<br>(f) to consider and act on the compromise and settlement of any Claim against or cause of action by or against the Estate;<br>(g) to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code.<br>(h) to fix the allowance of compensation to all professionals; and<br>(i) to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan, including, but not limited to, extending deadlines and time limits provided in the Plan. |

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

    (i) imposed by this Plan; or

    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

| Debtor | **Anwarul Islam Chunnu** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

**Not Applicable**

Respectfully submitted,

**X** s/Anwarul Islam Chunnu  
[Signature of the Plan Proponent]

Anwarul Islam Chunnu  
[Printed name]

**X** s/Richard S. Feinsilver  
[Signature of the Attorney for the Plan Proponent]

**Richard S Feinsilver**  
[Printed name]

EXHIBIT "A"
<u>LIQUIDATION ANALYSIS</u>
(as of October 31, 2022)

<u>ASSETS</u>

Estimated
<u>Market Value/Liquidation Value</u>

| | | | |
|---|---|---|---|
| A. | Non-Exempt Cash on hand | ( C ) | $ 16,000.00 |
| B. | Real Property | | $ 800,000.00 |
| C. | Business Assets | | $ 165,000.00 |
| D. | Other Non-Exempt Assets | | $       .00 |

TOTAL ASSETS                                    $ 981,000.00

<u>LIABILITIES</u>

<u>ADMINISTRATIVE AND PRIORITY
EXPENSES OF CHAPTER 7 LIQUIDATION</u>

| | |
|---|---|
| Chapter 7 Trustee Fee (3%) | $ 26,000.00 (Estimated) |
| Chapter 7 Professional Fees | $ 20,000.00 |
| Real Estate Broker (4%) | $ 32,000.00 |
| Chapter 11 Professional Fees | $ 6,000.00 |
| Subchapter V Trustee Fees | $ 2,500.00 |
| TOTAL ADMINISTRATIVE EXPENSES | $ 86,500.00 |

<u>PRIORITY TAX CLAIMS</u>

NONE

### CLASS 2.1 - SECURED CLAIMS - REAL PROPERTY

| | |
|---|---|
| Shellpoint/NewRez (First Mortgage) | $ 345,600.00 |
| NYC Water Board (Statutory Lien) | $ 15,264.41 |
| TOTAL CLASS 2.1 CLAIMS | $ 360,864.41 |

| | |
|---|---|
| Market Value - Real Property | $ 800,000.00 |
| Class 2.1 Claims | ($ 360,864.41) |
| Gross Proceeds | $ 439,135.59 |
| Non Filing Spouse's Share (50%) | ($ 219,567.80) |
| Debtor's Exemption | ($ 179,975.00) |
| Net Proceeds Available to Estate (A) | $ 39,592.80 |

### CLASS 2.2 - SECURED CLAIMS (OTHER-TAXI MEDALLION)

| | |
|---|---|
| OSK VII LLC | $ 145,000.00* |
| TOTAL CLASS 2.2 CLAIMS | ($ 145,000.00) |
| Net Proceeds available to Estate (B) | $     .00 |

| | |
|---|---|
| TOTAL NET PROCEEDS AVAILABLE TO ESTATE BEFORE ADMIN EXPENSES (A+B+C) | $ 55,592.80 |
| ADMIN, SECURED AND PRIORITY CLAIMS | $ 86,500.00 |
| NET LIQUIDATION VALUE OF ESTATE | ($30,907.20) |

* Includes credit of $20,000 lump sum payment made by debtor under terms of Agreed Order with this creditor.

EXHIBIT B

Anwarul Islamd Chunnu 21-42090-ess    Updated 11/8/2022

| | Jan 2023 | Feb 2023 | Mar 2023 | Apr 2023 | May 2023 | June 2023 | July 2023 | Aug 2023 | Sept 2023 | Oct 2023 | Nov 2023 | Dec 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Bank Balance | 16000 | 16105 | 17210 | 18215 | 19320 | 20425 | 21530 | 22675 | 23740 | 24845 | 25950 | 27055 |
| | | | | | | | | | | | | |
| Receipts - NYC Taxi | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 | 6800 |
| Tolls | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 |
| Gas | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Maintenance | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Insurance | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| Misc | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Net Receipts - NYC Taxi | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 | 5225 |
| Rental Income | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 | 1300 |
| Total Funds Available | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 | 6525 |
| | | | | | | | | | | | | |
| Utilities | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Food | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Clothing | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Entertainment | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Medical | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 |
| Gas/Travel | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Other/Misc | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Total Personal Expenses | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 | 1675 |
| | | | | | | | | | | | | |
| Net Before Plan Obligations | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 | 4850 |
| Class 2.1.1 - Mortgage | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 | 2173 |
| Class 2.1.2 - Water | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 |
| Class 2.1.3 - OSK | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 | 1265 |
| Class 3 - Gen Unsecured | 1000 | | | | | | | | | | | |
| Total Plan Obligations | 4745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 | 3745 |
| | | | | | | | | | | | | |
| Closing Bank Balance | 16105 | 17210 | 18215 | 19320 | 20425 | 21530 | 22635 | 23740 | 24845 | 25950 | 27055 | 28160 |